**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MICHAEL A. DiPRETA,                  :          CIVIL CASE NO.
    Plaintiff,                       :
                                     :
VS.                                  :
                                     :
SIKORSKY AIRCRAFT CORPORATION,       :
    Defendant.                       :          DECEMBER 31, 2019

## COMPLAINT

### I.    PRELIMINARY STATEMENT

1.    The plaintiff, Michael A. DiPreta, brings this action against his former employer, the defendant, Sikorsky Aircraft Corporation, in which he seeks declaratory, injunctive and equitable relief, economic, and compensatory damages, and costs and attorney fees to remedy the disability discrimination suffered by the plaintiff when the defendant refused the plaintiff's requests for reasonable accommodations and terminated his employment on account of his disability in violation of the provisions of the Americans with Disabilities Act, Title 42 U.S.C. § 12112(d)(4)(A), and the Connecticut Fair Employment Practices Act.

2.    The plaintiff, Michael A. DiPreta, also brings this action against his former employer, the defendant, Sikorsky Aircraft Corporation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, in which he seeks declaratory, injunctive and equitable relief, and compensatory damages, and costs and attorney fees for the discrimination suffered by the plaintiff when the defendant allowed

the plaintiff to be subjected to a sexually hostile work environment created by the plaintiff's supervisor.

3.     Further, this action is brought by the plaintiff against the defendant, Sikorsky Aircraft Corporation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, in which the plaintiff seeks declaratory, injunctive and equitable relief, compensatory damages, and costs and attorney fees resulting from the unlawful retaliation, including termination of his employment, inflicted on the plaintiff by the defendant, because of the plaintiff's opposition to the sexually hostile work environment to which he had been subjected by his supervisor.

4.     Further, the plaintiff, Michael A. DiPreta, brings this action against his former employer, the defendant, Sikorsky Aircraft Corporation, in which he seeks declaratory, injunctive and equitable relief, economic, and compensatory damages, and costs and attorney fees to remedy the disability discrimination suffered by the plaintiff when the defendant refused the plaintiff's requests for reasonable accommodations and terminated his employment on account of his disability in violation of the provisions of the Connecticut Fair Employment Practices Act.

5.     In addition, this action is brought by the plaintiff against the defendant, Sikorsky Aircraft Corporation, pursuant to the Connecticut Fair Employment Practices Act, Section 46a-51, et seq., in which the plaintiff seeks declaratory, injunctive and equitable relief, compensatory damages, and costs and attorney fees for the

discrimination suffered by the plaintiff when the defendant allowed the plaintiff to

be subjected to a sexually hostile work environment created by the plaintiff's

supervisor.

6.    Also, this action is brought by the plaintiff against the defendant, Sikorsky

Aircraft Corporation, pursuant to the Connecticut Fair Employment Practices Act,

in which the plaintiff seeks declaratory, injunctive and equitable relief,

compensatory damages, and costs and attorney fees resulting from the unlawful

retaliation, including termination of his employment,  inflicted on the plaintiff by

the defendant because of the plaintiff's opposition to the sexually hostile work

environment to which he had been subjected by his supervisor.

## II.    JURISDICTION

7.    This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

8.    This action also arises pursuant to Section 107(a) of the Americans With

Disabilities Act (hereinafter "ADA"), Title 42 U.S.C. §12117, which incorporates

by reference Section 706 of Title VII of the Civil Rights Act of 1964, as amended,

Title 42 U.S.C. §2000e-5.

9.    Jurisdiction is invoked pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. §

1343(a)(3), Title 28 U.S.C. § 1343(a)(4), Title 28 U.S.C. § 2201(a), and Title 42

U.S.C. §2000e-5(f).

10.    Jurisdiction over the plaintiff's state law claims is invoked pursuant to the Court's

supplemental jurisdiction.

11.   All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil

Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), and the Americans With

Disabilities Act (hereinafter "ADA"), Title 42 U.S.C. §12117 have occurred or

have been complied with in the following manner:

i.   A charge of employment discrimination on the basis of a sexually hostile work

environment and disability discrimination was filed with both the State of

Connecticut Commission on Human Rights and Opportunities and with the United

States Equal Employment Opportunity Commission, on or about May 6, 2019,

which filing with the United States Equal Employment Opportunity Commission and

with the State of Connecticut Commission on Human Rights and Opportunities was

within 300 days and 180 days, respectively, of the commission of the unlawful

employment practices alleged therein;

ii.   An amended charge of employment discrimination on the basis of a sexually hostile

work environment, disability discrimination and unlawful retaliation was filed with

both the State of Connecticut Commission on Human Rights and Opportunities and

with the United States Equal Employment Opportunity Commission, on or about

August 27, 2019, which filing with the United States Equal Employment

Opportunity Commission and with the State of Connecticut Commission on Human

Rights and Opportunities was within 300 days and 180 days, respectively, of the

commission of the unlawful employment practices alleged therein;

4

iii. On November 1, 2019, the plaintiff was issued a "Dismissal and Notice of Rights " by the United States Equal Employment Opportunity Commission. *Exhibit 1;*

iv. On October 31, 2019, the plaintiff was issued a "Release of Jurisdiction" by the State of Connecticut Commission on Human Rights and Opportunities. *Exhibit 2.*

12. Declaratory, injunctive, compensatory, and equitable relief is sought pursuant to Title 28 U.S.C. §2201, §2202 and Title 42 U.S.C. §2000e-5(g).

13. Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k), and Title 42 U.S.C. §1988.

## III.   VENUE

14. This action properly lies in the District of Connecticut pursuant to Title 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practices of which the plaintiff complains were committed in this judicial district.

## IV.   PARTIES

15. The plaintiff is a citizen of the United States and resides in the State of Connecticut.

16. The plaintiff is an "employee" as defined by Title VII of the Civil Rights Act of 1964, as amended.

17. The defendant is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business in Stratford, Connecticut.

18. The defendant is a person within the meaning of Section 101c of the Americans With Disabilities Act, Title 42 U.S.C. §12111(7) and Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

5

19.     The defendant is an employer within the meaning Title 42 U.S.C. §12111(5) in that the defendant engages in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

20.     The defendant is an employer as that term is defined by Connecticut General Statutes § 46a-51(10).

21.     Under Connecticut General Statutes § 46a-51(15), the plaintiff is an individual who has a record of, or is regarded as having one or more mental disorders, as defined in the most recent edition of the American Psychiatric Association's "Diagnostic and Statistical Manual of Mental Disorders."

22.     The plaintiff suffers from a mental impairment as that phrase is defined under the provisions of the Americans with Disabilities Act, as amended, Title 42 U.S.C. 12101 et seq.

23.     The plaintiff had been employed by the defendant within the state of Connecticut.

24.     All the discriminatory, and retaliatory employment practices alleged herein were committed within the state of Connecticut.

## V.     STATEMENT OF FACTS

25.     In 2015, the plaintiff worked for Butler America, LLC, a corporation organized and existing under the laws of the State of Delaware.

26.     Butler America, LLC provides qualified candidates to the defendant to perform job duties assigned to them by the defendant.

6

27.     Butler America, LLC hired the plaintiff in 2015, and assigned him to perform job

        duties supplied to him by the defendant.

28.     The plaintiff had worked in previous positions at Sikorsky Aircraft starting in

        2012 including an internship while attending Fairfield University, which awarded

        him a Bachelor of Science in Business Administration with a concentration in

        Human Resources.

29.     On September 11, 2017, the defendant hired the plaintiff to the position of

        Provisioning Analyst at Sikorsky Aircraft.

30.      When he began his employment for the defendant on September 11, 2017, the

        defendant assigned him to the supervision of Carlton Blakely ("Blakely").

31.     From the commencement of his employment with the defendant on September 11,

        2017, the plaintiff was subjected to a sexually intimidating, hostile, and offensive

        working environment brought about by the sexually harassing conduct of the

        plaintiff's supervisor, Blakely.

32.     From the very start of his employment with the defendant on September 11, 2017,

        Blakely subjected the plaintiff to a sexually hostile work environment.

33.     From the beginning of the plaintiff's employment with the defendant on

        September 11, 2017, Blakely subjected the plaintiff to a continuous stream of

        unwelcomed remarks of a highly sexual nature.

34.     Incidents of the sexually harassing conduct that Blakely directed at the plaintiff

        include the following:

7

i.   In December 2017, at an after work happy hour, Blakely approached the plaintiff and intrusively questioned him about his sex life in college;

ii.  In February 2018, while the plaintiff was discussing with a co-worker how he had attended various Super Bowl with a female friend,  Blakely, who was not part of the discussion, rudely intruded and crudely asserted that the plaintiff wouldn't dare make a sexual move on his friend;

iii. In that same month, Blakely told Nathan Gilland, the plaintiff's co-worker, that the plaintiff would be a forty-year-old virgin because of his personal relationship with his friend Doug;

iv.  During this same month, not only did Blakely inject the plaintiff's work environment with unwanted sexual comments, ridicule, and mockery, he unfairly criticized the plaintiff's job performance;

v.   At an LM commit review, after discussing the plaintiff's performance, Blakely told the plaintiff, without any explanation, that he should consider leaving the group to which he had been assigned;

vi.  On another occasion, after the plaintiff asked Blakely a question about a job assignment, he irrationally accused the plaintiff of asking too many questions, and wasting his time, and that he was going to throw the plaintiff under the bus to management;

vii. On still another occasion, when the plaintiff asked Blakely a work question, Blakely, reacted in an angry tone, told the plaintiff "I could get rid of anyone anytime by going to HR;"

viii. In March 2018, when the plaintiff asked Blakely about a project to which he had been assigned, Blakely yelled at the plaintiff in front of the plaintiff's co-workers, and angrily stormed away from the plaintiff without responding to the plaintiff's question.

35. Because of Blakely's harassing conduct, the plaintiff, on March 16, 2018, met with Lauren Martin ("Martin"), a human resource representative for the defendant, and complained to her about the verbal harassment, including sexually inappropriate comments,  to which he was being subjected by Blakely.

36. The plaintiff, at this time, did not raise Blakely's sexual demeaning comments because the plaintiff felt embarrassed about the incidents, and hoped that the intervention of the defendant's human resources department would remedy the sexually hostile work environment to which Blakely had subjected him by addressing his other harassing behavior.

37. In May of 2018, when Blakely called the plaintiff into his office to discuss a project, he informed the plaintiff that he had been contacted by the defendant's human resources department and that he had to participate in an investigation of a complaint made against him.

38. Blakely then told the plaintiff that because of the complaint he had to censor what he says to people.

39. During that same month of May 2018, at a happy hour for a co-worker of the plaintiff, Blakely openly displayed contempt for the investigation that the defendant was conducting into his behavior.

40. Blakely asserted that even though he had not done anything wrong, he was being made to attend a training session.

41. In May of 2018, Blakely held a group meeting with the employees he supervised to discuss the investigation into his conduct.

42. During the meeting, Blakely stated that human resources was unable to substantiate the complaint that had been filed against him.

43. Blakely also asserted that as a result of the complaint, he was less sociable because someone had reported him to human resources; he expressed anger about the complaint; he denied the allegations of the complaint, and he claimed to have known who had reported him.

44. On or about May 14, 2018, the plaintiff had a follow up meeting with human resources representative Lauren Martin, who informed the plaintiff that Blakely had expressed shock that a worker had complained about him.

45. For a short period of time, Blakely had refrained from making overtly sexual comments to the plaintiff.

46.    However, in August of 2018, Blakely once again resorted to openly expressing sexual comments to the plaintiff of a demeaning and inappropriate nature, such as the following:

i.   Blakely on various occasions called the plaintiff into his office and inquired about the plaintiff's sex life;

ii.   Blakely told the plaintiff that he should have sex at a wedding the plaintiff had planned on attending with his friends;

iii.   Blakely constantly addressed the topic of the plaintiff having sex with the plaintiff's friend, Nicole;

iv.   Blakely told the plaintiff to have drinks with Nicole so that Nicole and he would be relaxed before they had sex together;

v.   Blakely advised the plaintiff to have sex with Nicole in a hotel room, in his house, and in his backyard;

vi.   Blakely called the plaintiff into his office to urge the plaintiff to stay in the same hotel room with Nicole when attending the wedding, and then related to the plaintiff the manner in which he should perform sex with Nicole;

vii. Blakely taunted the plaintiff because he perceived the plaintiff to be a virgin, mocking him for not yet having had sex;

viii.   Blakely scolded the plaintiff for not listening to him about the plaintiff's need to have sex;

ix. Blakely said he would "pour sand" around the plaintiff if he didn't have sex with Nicole;

x.  On September 13, 2018, the week following the wedding that the plaintiff attended, Blakely called the plaintiff into his office, shut the door, and asked for details about any sex that happened at the wedding;

xi. On another occasion, Blakely told the plaintiff that the plaintiff needed to have sex to help him relax and advised him that sex would be healthy for his body.

47.  In October 2018, the sexually degrading comments made by Blakely continued unabated;

i. Blakely commented on how the plaintiff didn't listen to his advice about having sex to relax.

ii. Blakely offered to take the plaintiff to a strip club to show the plaintiff topless women;

iii. Blakely stated that the plaintiff's friend, Doug, was gay;

iv. Blakely ridiculed the plaintiff stating that the plaintiff must sit at home at night masturbating, at the same time pantomiming the act of masturbation while he was sitting in his chair in his office.

48.  The plaintiff told Blakely that his sexual comments made him uncomfortable and that his actions could be construed as sexual harassment

49.  Blakely replied by agreeing with the plaintiff's sexual harassment observation, and then asked the plaintiff, do you not think I'm a professional?

12

50.     At this point, because of the continuing harassment directed him by Blakely, the plaintiff became physically ill at work, resulting in insomnia and a loss of appetite.

51.     The plaintiff considered quitting his job because of the stress he was suffering from the sexual harassment being directed at him by Blakely.

52.     On or about October 10, 2018, the plaintiff was examined by a medical physician who specialize in psychotherapy, who diagnosed the plaintiff with post-traumatic stress disorder caused by workplace harassment.

53.     On or about October 15, 2018, the plaintiff met with a representative of the defendant's human resources department, and his work manager, Frank Upshur ("Upshur").

54.     The plaintiff revealed to the human resource representative and Upshur that he was being sexually harassed by Blakely, and that his work environment had turned extremely hostile as a result.

55.     Despite being the victim of Blakely's sexual harassment, the defendant on learning of Blakely's behavior, took no action to protect the plaintiff or remedy the hostile work environment.

56.     For two weeks after the plaintiff communicated the complaint of sexual harassment, he was kept in the same working area as Blakely, approximately 20-30 feet within each other, which resulted in the plaintiff suffering emotional distress and anxiety.

57.   Instead of removing Blakely from the plaintiff's work area, the defendant moved
      the plaintiff to another work location, miles away from his workplace, working
      under Stephen McCabe ("McCabe").

58.   On January of 2019, when it came time to give the plaintiff his annual
      performance review, the defendant had Blakely and Upshur meet with the
      plaintiff to conduct the review.

59.   The defendant was fully aware that Blakely was the individual who had been
      subjecting the plaintiff to a hostile work environment created by his continuing
      course of sexually degrading comments which he directed at the plaintiff.

60.   Blakely faulted the plaintiff for moving off the program before finishing his work,
      when he knew that the plaintiff was moved by the defendant after the plaintiff had
      complained about the sexual harassment to which Blakely had subjected him.

61.   In having Blakely meet with the plaintiff to address the plaintiff's annual
      performance evaluation after the plaintiff had complained about Blakely's
      abhorrent, sexual harassment, the defendant failed in its obligation to protect the
      plaintiff from Blakely's harassment.

62.   It was a blatant, callous act of intimidation for the defendant to allow Blakely, the
      perpetrator of the sexual harassment directed at the plaintiff, to meet with the
      plaintiff to address the plaintiff's annual performance evaluation.

63.   For the plaintiff's annual 2018 performance review, the defendant unfairly rated
      him as "inconsistently" achieved.

14

64. On January 22, 2019, the plaintiff was called to a meeting with Upshur and Lauren Martin, where they informed the plaintiff that he was being placed on a performance improvement plan ("PIP"), and if he made any errors while on it, he would be immediately terminated.

65. Having made the threat of terminating his employment, Upshur and Martin, then offered the plaintiff a severance package, again threatening him with termination if he did not accept the severance package which called for his "voluntary" termination of his employment with the defendant.

66. The plaintiff informed Upshur and Martin that he considered the threat of termination and the severance package as an act of retaliation by the defendant against him for complaining about the hostile work environment, and sexual harassment to which he was subjected by Blakely.

67. The plaintiff refused to accept the severance packages, and, as a result, was placed on the PIP.

68. The PIP, which commenced on February 11, 2019, was haphazard, fraught with substantial deficiencies in its implementation, including the following:

i. The PIP had no commencement date;

ii. The PIP failed to state the number of files or amount of line items in each spreadsheet that would need to be successfully completed;

iii. Did not provide the plaintiff with the necessary training on the new information codes being given to him on the parts list;

15

iv.  The plaintiff was not  provided the project to which he was assigned on the PIP until
     9:30 a.m. which did not provide him with enough time to prepare for his 10:00 a.m.
     meeting with Upshur to go over the project; and

v.   Although Upshur and McCabe were to meet with the plaintiff weekly while he was
     on the PIP to review the plaintiff's performance, they never met with him to assess
     his progress.

69.  The PIP was a sham, meant to retaliate against the plaintiff and to provide the
     defendant with a reason to terminate the plaintiff's employment.

70.  The defendant had predetermined that the plaintiff would fail the PIP.

71.  The plaintiff was placed on the PIP in retaliation against him for complaining
     about Blakely's sexually harassing behavior.

72.  On March 19, 2019, the plaintiff met with his new human resource representative,
     Lynn Keane ("Keane"), and Stefany Pina ("Pina"), who supposedly conducted the
     investigation into the plaintiff's harassment complaints.

73.  The investigation conducted by Pina covered up Blakely's sexually harassment
     conduct, and the hostile work environment to which he subjected the plaintiff.

74.  Pina falsely claimed that the plaintiff contributed/invited Blakely's harassment by
     speaking with co-workers about his personal life, weekend activities, family life,
     and dating life; that he shared too much of his personal life; that he was too open
     about his personal life outside of work.

16

75.  Pina's conclusion in blaming the plaintiff for Blakely's repulsive behavior is untenable and meant to justify the defendant's failure to address the sexual harassment and hostile work environment to which the plaintiff had been subjected.

76.  At the same meeting, Pina, and Keane, threatened to place the plaintiff on a second PIP unless he accepted the severance agreement originally proposed by the defendant.

77.  Pina and Keane covered up the harassment and hostile work environment to which the plaintiff was subjected by Blakely and retaliated against him for complaining about Blakely's behavior.

78.  Throughout the plaintiff's employment, Blakely constantly vocalized in a degrading manner his obsession with the plaintiff's sexual life.

79.  The plaintiff has suffered emotional distress because of the harassment to which he was subjected and the hostile work environment within which he was made to work.

80.  The plaintiff has suffered emotional distress because of the unlawful retaliation to which he was subjected by the defendant.

81.  The defendant did not take any meaningful steps to prevent Blakely from behaving in the sexually harassing manner toward the plaintiff, nor did it prevent Blakely from subjecting the plaintiff to a hostile work environment.

82.  The actions of Blakely created a pervasive sexually hostile work environment characterized by unlawful harassment directed by Blakely at the plaintiff, which permeated the plaintiff's workplace.

83.  A reasonable person in the plaintiff's position would find the conduct of Blakely to be highly offensive.

84.  A reasonable person in the plaintiff's position would find that the conduct of Blakely would substantially interfere with his or her job performance.

85.  After the plaintiff informed the defendant in January of 2019, of the sexually hostile work environment to which he was subjected, including the sexually degrading behavior to which he was subjected by Blakely, the defendant took no meaningful action to address the plaintiff's complaints.

86.  After the plaintiff complained about the sexually harassing behavior of Blakely and the sexually hostile work environment in which the plaintiff was made to work, the defendant took the first opportunity to retaliate against the plaintiff by placing him on a bogus PIP on two occasions, and threatening both times to terminate his employment if he didn't accept a severance agreement which would result in his termination.

87.  The second PIP was a sham in that

i.   Instructions were vague and lacked communication;

ii.  The plaintiff was provided with conflicting information regarding the importance of quality vs quantity;

18

iii.   New material was assigned to the plaintiff on which he had received no prior
       instructions;

iv.   The plaintiff was not trained on a faster method to research NSN codes; coworker
       (Kathleen Stirling) questioned why the plaintiff was performing NSN code research
       in an outdated, inefficient manner;

v.   The plaintiff had to complete an extra step in the PIP process because of a mistake
       made by PIP creator (Stephen McCabe);

vi.   The plaintiff had to create a folder and save every part's list document that he used
       for PIP work Package 10;

vii.   During a weekly meeting, the plaintiff discussed having to complete this
       unnecessary, extra step with Frank Upshur and Lynn Keane;

viii.   Frank Upshur began questioning/mentioning that the extra step shouldn't take too
       long;

ix.   Even though the PIP had placed the plaintiff under time restrictions within which to
       perform, Frank Upshur deceitfully asserted that the plaintiff was a salary employee,
       not hourly, and he didn't have to punch a clock at the end and beginning of the day.

x.   The plaintiff was not provided extra time to make up for time lost from weekly
       meetings including meetings scheduled to discuss the plaintiff's request for
       accommodations for his post-traumatic stress disorder.

88.   The defendant further retaliated against the plaintiff by falsely asserting that the plaintiff would not be eligible for unemployment benefits if he did not accept the severance agreement, and then was terminated for failing the PIP.

89.   On or about February 11, 2019, the defendant placed the plaintiff on another PIP, which it had predetermined the plaintiff would fail.

90.   The defendant placed the plaintiff on a PIP to retaliate against the plaintiff for opposing the sexual harassment to which he had been subjected by Blakely.

91.   On July 1, 2019, the defendant terminated the plaintiff's employment under the pretense that he had not satisfied the PIP.

92.   The defendant terminated the plaintiff's employment to retaliate against the plaintiff for opposing the sexually hostile work environment created by Blakely's sexual harassment, and for filing complaints with the CHRO and the EEOC

93.   In October of 2018, the plaintiff was diagnosed by a psychologist as suffering from post-traumatic stress disorder.

94.   In May of 2019, the plaintiff requested workplace accommodation identified by his psychologist.

95.   After various meetings with representatives of the plaintiff, the defendant rejected the plaintiff's accommodation request in the form of "data base loading."

96.   The defendant also rejected other accommodation requests including the clarification of vague work-related instructions.

97.     The defendant failed to enter into a dialogue with the plaintiff to identify and

provide reasonable accommodations to allow the plaintiff to perform the essential

function of his job.

## VI.     FIRST CAUSE OF ACTION (UNLAWFUL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – HOSTILE WORK ENVIRONMENT)

98-194. The plaintiff realleges and incorporates by reference paragraphs 1-97.

195.    Blakely had intentionally created a hostile work environment for the plaintiff that was

permeated by his degrading sexual comments and suggestions, which caused the

plaintiff severe embarrassment and anxiety.

196.    The actions of Blakely created a pervasive hostile work environment characterized by

unlawful harassment directed by Blakely at the plaintiff because of the plaintiff's

gender, which permeated the workplace to which the plaintiff was assigned while

working for the defendant.

197.    A reasonable person in the plaintiff's position would find the conduct of Blakely to be

highly offensive.

198.    A reasonable person in the plaintiff's position would find that the conduct of Blakely

would substantially interfere with his or her job performance.

199.    Although the plaintiff complained about the sexually demeaning behavior of Blakely,

the defendant took no meaningful action to address his offensive conduct.

200.   The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged from his treatment by the defendant unless the defendant is enjoined by this Court.

201.   The plaintiff was subjected to unlawful sexual harassment which the defendant failed to address.

202.   The plaintiff is now and will continue to suffer emotional distress as a direct result of the unlawful sexual harassment to which he was subjected by Blakely and the defendant's termination of his employment.

203.   The plaintiff has suffered economic injury as a direct result of the unlawful sexual harassment to which the defendant was subjected, and the termination of the plaintiff's employment.

204.   The reasons advanced by the for terminating the plaintiff's employment are false and are pretexts for justifying its real reason for discharging the plaintiff, his disability.

205.   The defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when it allowed the plaintiff to be subjected to a sexually demeaning hostile work environment and terminating the plaintiff's employment.

206.   The defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, when it did not address, and allowed the sexually hostile work environment to which the plaintiff was subjected to exist, even after the plaintiff complained to the defendant about the behavior of Blakely

**VII.    SECOND CAUSE OF ACTION (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)**

207-303. The plaintiff realleges and incorporates by reference paragraphs 1-97.

304.    The defendant was fully aware of the plaintiff's disability prior to terminating the plaintiff's employment.

305.    The plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, in that the plaintiff suffers from a mental impairment which substantially limits one or more of her major life activities, including sleeping, concentrating, and eating.

306.    The plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, who, with a reasonable accommodation, was fully capable of performing the essential functions of his job.

307.    Even though he was fully qualified to perform the essential functions of his position with reasonable accommodations, the defendant terminated the plaintiff's employment because the plaintiff suffers from a mental impairment which substantially limited several of his major life activities including sleeping, concentrating, and eating.

308.    The defendant refused to enter an interactive discourse with the plaintiff regarding the reasonable accommodations requested by the plaintiff to perform his Provisioning Analyst job duties.

309. The defendant refused to provide the plaintiff with the reasonable accommodations which he requested to allow him to perform the essential functions of his job as Provisioning Analyst.

310. The defendant terminated the plaintiff's employment even though he was fully qualified to perform the essential functions of his position because the defendant regarded the plaintiff as suffering from a mental impairment.

311. The defendant terminated the plaintiff's employment because of his mental disability.

312. The defendant terminated the plaintiff's employment because it regarded him as suffering from a mental disability.

313. The defendant terminated the plaintiff's employment because he had a record of suffering from a disability.

314. The termination of the plaintiff's employment by the defendant because he was afflicted with a mental impairment that substantially limits her major life activities is a discriminatory action prohibited by the provisions of the Americans with Disabilities Act, as amended.

315. The termination of the plaintiff's employment by the defendant for which he was fully qualified, because it regarded the plaintiff as suffering from a mental impairment which substantially limits the plaintiff's major life activities is a discriminatory act prohibited by the provisions of the Americans with Disabilities Act, as amended.

316.   As a result of his mental impairment, the plaintiff is substantially limited in performing several major life activities including sleeping, eating, and concentrating.

317.   The plaintiff at all times relevant herein is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.

318.   The plaintiff is a qualified individual with a disability as that term is defined under the provisions of the Americans with Disabilities Act, as amended.

319.   Although the plaintiff's condition substantially limits his major life activities, including sleeping, eating, and concentrating, the plaintiff is able and would be able to perform the essential functions of his job.

320.   The defendant discriminated against the plaintiff with malice and with a reckless indifference to the federally protected rights of the plaintiff guaranteed to the plaintiff by the provisions of the Americans with Disabilities Act, as amended.

321.   The discriminatory actions of the defendant have caused, continues to cause, and will cause the plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

322.   The discriminatory actions of the defendant have caused the plaintiff to suffer emotional distress.

**VIII.   THIRD CAUSE OF ACTION (UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED )**

323-419. The plaintiff realleges and incorporates by reference paragraphs 1-97.

420.  Since the plaintiff complained to the representative of the defendant's human resources department, and Upshur, about the sexually harassing conduct which Blakely directed at him, the defendant subjected the plaintiff to unlawful retaliation including the following retaliatory acts:

    a.  Placing the plaintiff on two performance improvement plans which the defendant failed to follow through on its obligations, including meeting with the plaintiff, reviewing, and mentoring his performance;

    b.  Denying the plaintiff reasonable job accommodations for his mental impairment; and

    c.  Terminating the plaintiff's employment.

421.  The defendant failed to participate in the performance improvement plans in a meaningful manner, not providing the plaintiff with any meaningful opportunity to meet the vague and  ambiguous goals imposed on the plaintiff.

422.  The defendant terminated the plaintiff's employment in retaliation for the plaintiff opposing the sexually harassing conduct directed at him by Blakely.

423.  As a result of the defendant's retaliatory behavior, the plaintiff has suffered economic losses and benefits.

424.  Because of the retaliatory behavior of the defendant, the plaintiff has suffered emotional distress.

425.  The defendant terminated the plaintiff's employment, only after the plaintiff complained about the sexual harassment to which he was subjected by Blakely.

26

426.   The defendant terminated the plaintiff's employment in retaliation against the plaintiff for complaining about the sexual harassment to which he had been subjected by Blakely.

427.   The defendant intentionally, and with a discriminatory animus, subjected the plaintiff to unlawful retaliation on account of the plaintiff's opposition to the sexual harassment to which he had been subjected by Blakely.

428.   Notwithstanding the retaliatory behavior to which the plaintiff has been subjected, the plaintiff continued to perform his job duties in a competent manner until the defendant terminated his employment.

429.   The plaintiff's opposition to the sexually harassing conduct to which he was subjected by Blakely to constitutes protected activity under the provisions of Title VII of the Civil Rights Act of 1964, as amended.

430.   The defendant has engaged in unlawful retaliation against the plaintiff with malice and/or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

431.   The retaliatory actions of the defendant directed at the plaintiff would deter a reasonable employee from making, filing, or supporting a claim of workplace discrimination.

432.   The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged and the plaintiff is now suffering and will continue to suffer irreparable injury from his treatment by the defendant unless the defendant is enjoined by this Court.

433.    The plaintiff is now and will continue to suffer emotional distress as a direct result of the defendant's unlawful retaliation.

434.    The plaintiff has suffered economic injury as a direct result of the defendant's unlawful retaliation.

435.    The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the sexually harassing conduct of Blakely when he complained about such acts to a representative of the defendant's human resources department, and Upshur, and filed complaints with the United States Equal Employment Opportunity Commission and the State of Connecticut Commission on Human Rights and Opportunities.

436.    Because the plaintiff's opposition to the sexually harassing conduct of Blakely was a determinative and/or motivating factors in the retaliation  to which the plaintiff was subjected by the defendant, the defendant violated Title VII of the Civil Rights Act of 1964, as amended.

437.    The defendant engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

**IX.    FOURTH CAUSE OF ACTION (UNLAWFUL DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT – HOSTILE WORK ENVIRONMENT)**

438-534. The plaintiff realleges and incorporates by reference paragraphs 1-97.

28

535.   Blakely had intentionally created a hostile work environment for the plaintiff that was permeated by his degrading sexual comments and suggestions, which caused the plaintiff severe embarrassment and anxiety.

536.   The actions of Blakely created a pervasive hostile work environment characterized by unlawful harassment directed by Blakely at the plaintiff because of the plaintiff's gender, which permeated the workplace to which the plaintiff was assigned while working for the defendant.

537.   A reasonable person in the plaintiff's position would find the conduct of Blakely to be highly offensive.

538.   A reasonable person in the plaintiff's position would find that the conduct of Blakely would substantially interfere with his or her job performance.

539.   Although the plaintiff complained about the sexually demeaning behavior of Blakely, the defendant took no meaningful action to address his offensive conduct.

540.   The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged from his treatment by the defendant unless the defendant is enjoined by this Court.

541.   The plaintiff is now and will continue to suffer emotional distress as a direct result of the unlawful harassment to which he was subjected by Blakely and the termination of his employment.

542.   The plaintiff has suffered economic injury as a direct result of the defendant's unlawful harassment, and termination of the plaintiff's employment.

543.    The plaintiff was subjected to unlawful sexual harassment which the defendant failed to address.

544.    The defendant violated the provisions of Connecticut General Statutes §§ 46a-60(b)(1) and 46a-60(b)(8), when it allowed the plaintiff to be subjected to a sexually hostile work environment and terminating the plaintiff's employment.

545.    The defendant violated the provisions of Connecticut General Statutes §§ 46a-60(b)(1) and 46a-60(b)(8), when it did not address, and allowed the sexually hostile work environment to which the plaintiff was subjected to exist, even after the plaintiff complained to the defendant about the behavior of Blakely.

**X.      FIFTH CAUSE OF ACTION (VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT – DISABILITY DISCRIMINATION)**

546-642. The plaintiff realleges and incorporates by reference paragraphs 1-97.

643.    The defendant was fully aware of the plaintiff's disability prior to terminating the plaintiff's employment.

644.    The plaintiff suffers from a mental disability as that term is defined by Connecticut

645.    Even though he was fully qualified to perform the essential functions of his position with reasonable accommodations, the defendant terminated the plaintiff's employment because the plaintiff suffers from a mental disability.

646.    The defendant refused to provide the plaintiff with the reasonable accommodations which he requested to allow him to perform the essential functions of his job as Provisioning Analyst.

647.    The defendant terminated the plaintiff's employment even though he was fully

qualified to perform the essential functions of his position because the defendant

regarded the plaintiff as suffering from a mental disability.

648.    The defendant terminated the plaintiff's employment because of his mental disability.

649.    The termination of the plaintiff's employment by the defendant because he was

afflicted with a mental disability and/or because the defendant regarded the plaintiff

as suffering from a mental disability and/or has a record of suffering from a mental

disability is a discriminatory action prohibited by the provisions of the Connecticut

General Statutes § 46a-60(b)(1).

650.    The defendant discriminated against the plaintiff with malice and with a reckless

indifference to the plaintiff's right under Connecticut General Statutes § 46a-60(b)(1)

to be free from disability discrimination.

651.    The discriminatory actions of the defendant have caused, continues to cause, and will

cause the plaintiff to suffer substantial damages for loss of income, future pecuniary

losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

**XI.      SIXTH CAUSE OF ACTION (UNLAWFUL RETALIATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT )**

652-748. The plaintiff realleges and incorporates by reference paragraphs 1-97.

749. Since the plaintiff complained to the representative of the defendant's human resources

department, and Upshur, about the sexually harassing conduct which Blakely directed at

him, the defendant subjected the plaintiff to unlawful retaliation including the following

retaliatory acts:

    a.   Placing the plaintiff on two performance improvement plans which the

          defendant failed to follow through on its obligations, including meeting with

          the plaintiff, reviewing, and mentoring his performance;

    b.   Denying the plaintiff reasonable job accommodations for his mental

          impairment; and

    c.   Terminating the plaintiff's employment.

750.   The defendant failed to participate in the performance improvement plans in a

        meaningful manner, not providing the plaintiff with any meaningful opportunity to

        meet the vague and  ambiguous goals imposed on the plaintiff.

751.   The defendant terminated the plaintiff's employment in retaliation for the plaintiff

        opposing the sexually harassing conduct directed at him by Blakely.

752.   As a result of the defendant's retaliatory behavior, the plaintiff has suffered economic

        losses and benefits.

753.   Because of the retaliatory behavior of the defendant, the plaintiff has suffered

        emotional distress.

754.   The defendant terminated the plaintiff's employment, only after the plaintiff

        complained about the sexual harassment to which he was subjected by Blakely.

755.   The defendant terminated the plaintiff's employment in retaliation against the plaintiff for complaining about the sexual harassment to which he had been subjected by Blakely.

756.   The defendant intentionally, and with a discriminatory animus, subjected the plaintiff to unlawful retaliation on account of the plaintiff's opposition to the sexual harassment to which he had been subjected by Blakely.

757.   Notwithstanding the retaliatory behavior to which the plaintiff has been subjected, the plaintiff continued to perform his job duties in a competent manner until the defendant terminated his employment.

758.   The plaintiff's opposition to the sexually harassing conduct to which he was subjected by Blakely constitutes protected activity under the provisions of the Connecticut Fair Employment Practices Act.

759.   The defendant has engaged in unlawful retaliation against the plaintiff with malice and/or reckless indifference to the plaintiff's rights under § 46a-60(b)(4) of the Connecticut General Statutes.

760.   The retaliatory actions of the defendant directed at the plaintiff would deter a reasonable employee from making, filing, or supporting a claim of workplace discrimination.

761.   The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged and the plaintiff is now suffering and will continue to suffer irreparable injury from his treatment by the defendant unless the defendant is enjoined by this Court.

762.    The plaintiff is now and will continue to suffer emotional distress as a direct result of the defendant's unlawful retaliation.

763.    The plaintiff has suffered economic injury as a direct result of the defendant's unlawful retaliation.

764.    The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the sexually harassing conduct of Blakely when he complained about such acts to a representative of the defendant's human resources department, and Upshur, and filed complaints with the United States Equal Employment Opportunity Commission and the State of Connecticut Commission on Human Rights and Opportunities.

765.    Because the plaintiff's opposition to the sexually harassing conduct of Blakely was a determinative and/or motivating factors in the retaliation  to which the plaintiff was subjected by the defendant, the defendant violated Connecticut General Statutes § 46a-60(b)(4).

766.    The defendant engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under the Connecticut Fair Employment Practices Act.

**XII.    PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

As to the First, and Third Causes of Action:

    i.   Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended;

    ii.   Award plaintiff the equitable relief of lost pay and benefits, together with prejudgment interest for the entire period;

    iii.   Award the plaintiff the equitable relief of front pay until she reaches retirement eligibility;

    iv.   Award plaintiff compensatory damages;

    v.   Award plaintiff costs and attorney fees; and

    vi.   Grant such other and further relief as the Court may deem just and proper.

As to the Second Cause of Action:

    i.   Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights under the Americans with Disabilities Act;

    ii.   Award plaintiff the equitable relief of lost pay and benefits, together with prejudgment interest for the entire period;

    iii.   Award the plaintiff the equitable relief of front pay until she reaches retirement eligibility;

    iv.   Award plaintiff compensatory damages;

    v.   Award plaintiff costs and attorney fees; and

    vi.   Grant such other and further relief as the Court may deem just and proper.

As to the Fourth, Fifth, and Sixth Causes of Action

i.   Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights under the Connecticut Fair Employment Practices Act;

ii.  Award plaintiff the equitable relief of lost pay and benefits, together with prejudgment interest for the entire period;

iii. Award the plaintiff the equitable relief of front pay until she reaches retirement eligibility;

iv.  Award plaintiff compensatory damages;

v.   Award plaintiff costs and attorney fees; and

vi.  Grant such other and further relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A TRIAL BY JURY.**

THE PLAINTIFF – MICHAEL DiPRETA

BY/s/ Thomas W. Bucci
    Thomas W. Bucci
    Fed. Bar #ct07805
    WILLINGER, WILLINGER & BUCCI, P.C.
    855 Main Street
    Bridgeport, CT  06604
    Tel: (203) 366-3939
    Fax: (203) 337-4588
    thomaswbucci@outlook.com

EXHIBIT

1

ALL-STATE LEGAL®

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Michael A. DiPreta<br>94 Old Colony Lane<br>Milford, CT 06461 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2019-01402 | Amon L. Kinsey, Jr.,<br>Supervisory Investigator | (617) 565-3189 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)     Charging Party is pursuing claims in another form.

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Feng K. An,
Area Office Director

November 1, 2019

(Date Mailed)

Enclosures(s)

cc:

**LOCKHEED MARTIN CORP D/B/A SIKORSKY AIRCRAFT**
6801 Rockledge Drive
Bethesda, MD 20817

Thomas W. Bucci, Esq.
**WILLINGER, WILLINGER & BUCCI, P.C.**
855 Main Street
Bridgeport, CT 06604



EXHIBIT
2

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Michael A. DiPreta
**COMPLAINANT**

CHRO No. 1920457

vs.

EEOC No. 16A-2019-01402

Lockheed Martin Corp. dba Sikorsky Aircraft
**RESPONDENT**

### RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** October 31, 2019

*Tanya A. Hughes*
Tanya A. Hughes, Executive Director

Service:
Complainant's counsel: tbucci@wwblaw.com
Respondent's counsel: elsussman@daypitney.com